# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 21-20580-CR-GAYLES/TORRES

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

JUAN DOMINGO EUSEBIO, and
JOSE MANUEL MENDEZ,

    Defendants.
_____/

## REPORT AND RECOMMENDATION ON
## DEFENDANTS' MOTION TO DISMISS INDICTMENT

This matter is before the Court on Defendants Juan Domingo Eusebio's ("Mr. Eusebio") and Jose Manuel Mendez's ("Mr. Mendez") (collectively "Defendants"), Joint Motion to Dismiss the Indictment. [D.E. 23]. The Unites States of America (the "Government") filed a Response in Opposition on June 3, 2022 [D.E. 28]. Defendants did not file a reply to the Government's Response and the time to do so has now elapsed. Therefore, the Motion is now ripe for disposition.[1] After careful consideration of the Motion, the record, the relevant authorities, and for the reasons discussed below, Defendants' Motion should be DENIED.

---

[1] On May 31, 2022, the Honorable Darrin P. Gayles referred the Motion to the Undersigned for a Report and Recommendation. [D.E. 24].

## I.     BACKGROUND

On or about November 16, 2021, a helicopter detected a go-fast vessel ("GFV") approximately 126 nautical miles north of La Guajira, Colombia, in international waters. [D.E. 1]. Because the vessel displayed no indicia of nationality, had two individuals on board, and visible fuel barrels on deck, as well as a trap covering the forward part of the vessel, the HNLMS HOLLAND, which was in the vicinity with a U.S. Law Enforcement Detachment Team on board, was diverted to investigate. *Id*. Shortly thereafter, the HNLMS HOLLAND launched two small boats with boarding teams to intercept the vessel. *Id*.

After successfully locating the GFV and upon arrival at the scene, the boarding teams reported the presence of two individuals onboard the vessel: Mr. Eusebio and Mr. Mendez. Mr. Eusebio, who was identified as the master of the vessel, made a claim of Dominican nationality for the GFV. Upon being contacted by the U.S. authorities, the Government of the Dominican Republic, however, could neither confirm nor deny registry of the vessel. Accordingly, the vessel was treated as a stateless vessel under 46 U.S.C. § 70502(d)(1)(C) of the Maritime Drug Law Enforcement Act ("MDLEA"). A full law enforcement boarding ensued, and law enforcement officials recovered approximately 235 kilograms of what tested positive for cocaine. *Id*. Both individuals, along with the recovered cocaine, were transferred to the HLMS HOLLAND.

The Defendants were charged by indictment in the Southern District of Florida on December 1, 2021. [D.E. 5]. The Indictment charged both Defendants with one

count of conspiracy to possess a controlled substance aboard a vessel and one count of possession in violation of §§ 70503(a)(1) and 70506(b) of the MDLEA. [D.E. 5]. Defendants now jointly move to dismiss the indictment pursuant to Fed. R. Crim. P. 12(b)(2), arguing that § 70502(d)(1)(C), the jurisdictional provision of the MDLEA, is both facially unconstitutional and unconstitutional as applied to this case. *See* [D.E. 23].

## II.     APPLICABLE PRINCIPLES AND LAW

A motion to dismiss an indictment is governed by Federal Rule of Criminal Procedure 12(b), which allows a defendant to challenge an indictment on various grounds, including failure to state an offense, lack of jurisdiction, or constitutional reasons. *See United States v. Kaley*, 677 F.3d 1316, 1325 (11th Cir. 2012). Moreover, a "motion that the court lacks jurisdiction may be made at any time while the case is pending," including after guilty pleas have been entered. *See* Fed. R. Crim. P. 12(b)(2); *see also Class v. United States*, 138 S.Ct. 798, 803–04 (2018) ("[A] plea of guilty to a charge does not waive a claim that—judged on its face—the charge is one which the State may not constitutionally prosecute.") (quoting *Menna v. New York*, 423 U.S. 61, 63 & n.2 (1975)).

An indictment "may be dismissed where there is an infirmity of law in the prosecution; a court may not dismiss an indictment, however, on a determination of facts that should have been developed at trial." *United States v. Torkington*, 812 F.2d 1347, 1354 (11th Cir. 1987). Further, "[t]he sufficiency of a criminal indictment is determined from its face." *United States v. Critzer*, 951 F.2d 306, 307 (11th Cir. 1992).

3

The indictment's allegations are assumed to be true and are viewed in the light most favorable to the government. *See Torkington*, 812 F.2d at 1354.

### III.   ANALYSIS

Defendants' motion advances two arguments in support of dismissal. First, in what they frame as an issue of first impression in this Circuit, Defendants argue that § 70502(d)(1)(C) is facially unconstitutional because it goes beyond the limits of customary international law embodied in the Felonies Clause of the Constitution. Second, Defendants argue that § 70502(d)(1)(C) is unconstitutional as applied here because they were apprehended within Colombia's Exclusive Economic Zone ("EEZ") and not on the high seas. The Court finds Defendants' arguments unpersuasive.

#### A.   *The MDLEA and its Definition of Stateless Vessel*

The Constitution grants Congress the power "[t]o define and punish Piracies and Felonies committed on the high Seas, and Offences against the Law of Nations." U.S. Const. art. I, § 8, cl. 10. "As interpreted by the Supreme Court, this clause contains three distinct grants of power: (1) the power to define and punish piracies (the Piracies Clause); (2) the power to define and punish felonies committed on the high seas (the Felonies Clause); and (3) the power to define and punish offenses against the law of nations, (the Offences Clause)." *See United States v. Macias*, 654 F. App'x 458, 460 (11th Cir. 2016) (quotation marks and citation omitted).

Pursuant to this authority, and in recognition of the fact that "trafficking in controlled substances abord vessels is a serious international problem, . . . [that] presents a specific threat to the security and societal well-being of the United

4

States[,]" Congress enacted the MDLEA in 1986. *See* 46 U.S.C. § 70501. MDLEA makes it a federal crime for a person "on board a covered vessel . . . [to] knowingly or intentionally manufacture or distribute, or possess with intent to manufacture or distribute, a controlled substance." *See* 46 U.S.C. § 70503(a); *see also United States v. Estupinan*, 453 F.3d 1336, 1338 (11th Cir. 2006). A "covered vessel" is one that, among other things, is "subject to the jurisdiction of the United States." *See* 46 U.S.C. § 70503(e)(1). In turn, the MDLEA deems a vessel subject to the jurisdiction of the United States if the master of the vessel makes a claim of nationality but the claimed nation of registry "does not affirmatively and unequivocally assert that the vessel is of its nationality." *See* 46 U.S.C. § 70502(c)(1)(A), (d)(1)(C). Accordingly, if the authorities of a claimed nation of registry are unable to corroborate a master's claim of nationality, the MDLEA deems that vessel stateless, allowing for the prosecution under U.S. law of any person aboard the vessel.

### B. *The MDLEA Was a Constitutional Exercise of Congressional Authority Under the Felonies Clause*

Defendants argue that § 70502(d)(1)(C) is unconstitutional because its definition of stateless vessel clashes with customary international law ("CIL"). According to Defendants, the scope of the power granted by the Felonies Clause to Congress is confined to the limits proscribed by CIL and, under CIL, a verbal claim of nationality by the master of the vessel constitutes a prima facie showing of nationality. [D.E. 23, p. 6] ("The scope of the power granted to Congress under the Felonies Clause is subject to the bounds of customary international law[.]") (citation omitted). However, so goes Defendants' argument, because § 70502(d)(1)(C) allows

5

U.S. officers to treat as stateless vessels that, under international law, would be considered vessels with nationality, this jurisdictional provision of the MDLEA transcends CIL and the scope of power granted by the Felonies Clause. *Id.*

As a threshold matter, the Court disagrees with Defendants' categorization of the question at hand as an issue of absolute first impression in this Circuit. [D.E. 23, p. 11] (arguing that Eleventh Circuit cases are inapposite because in those cases "the defendants never argued, and the panel never considered, whether Congress's authority to define and punish . . . Felonies on the high seas is constrained by customary international law") (quotation marks and citation omitted). Defendants' claim of novelty is diminished by a reading of *United States v. Macias*, where the Eleventh Circuit, in a per curiam unpublished opinion, addressed this exact question and rejected a near-identical claim of unconstitutionality against § 70502(d)(1)(C). *See Macias*, 654 F. App'x 458.

Much as Defendants do here, Macias argued that by enacting § 70502(d)(1)(C), Congress exceeded its authority under the Felonies Clause because his prosecution under MDLEA did not comport with CIL. Indeed, a review of that case and its record reveals that Macias made the same substantive argument that Defendants put forth here, namely, that the Felonies Clause is subject to the limits of CIL. *Compare* Reply Brief of Appellant at 4-7, *United States v. Macias*, 2016 WL 1375933 (arguing that "Congress's Power to Define and Punish Felonies on the High Seas is Limited by International Law") *with* [D.E. 23, pp. 8-11; 55] (arguing that "Congress's authority to define and punish . . . Felonies on the high seas is constrained by customary

6

international law[.]") (quotation marks and citation omitted). Yet, citing to several binding Eleventh Circuit holdings that have upheld the MDLEA, the *Macias* panel squarely rejected appellant's claim in that case:

> Macias contends that under Bellaizac-Hurtado's reasoning, the term "define" in the Piracies and Felonies Clause limits Congress's authority under all three clauses to violations of customary international law. . . .
>
> Macias misreads Bellaizac–Hurtado. The Court in Bellaizac–Hurtado reasoned that it was the terms that follow "define" (i.e., "Piracies," "Felonies committed on the high Seas," and "against the Laws of Nations") that narrow Congress's authority. See id. at 1249. And, **unlike** the Offences Clause, **the Felonies Clause is not narrowed by the language "against the Laws of Nations."** See U.S. Const., art. I, § 8, cl. 10. Bellaizac–Hurtado 's discussion of the meaning of the word "define" as it pertains to the Offences Clause does not support Macias's argument as to the Felonies Clause. Furthermore, the interpretation of the Felonies Clause Macias urges upon us conflicts with this Court's long-standing precedent that "the assertion of jurisdiction over stateless vessels on the high seas in no way transgresses recognized principles of international law." See Marino–Garcia, 679 F.2d at 1382.

*Macias*, 654 F. App'x at 461 (emphasis added).

While the Eleventh Circuit in *Macias* did not explicitly address whether MDLEA's definition of stateless vessel in § 70502(d)(1)(C) comports with CIL, that opinion nevertheless squarely refused to conflate the international law limitations found in the Offences Clause with the relatively broader scope of power embodied in the Felonies Clause,[2] which is in essence the same action that Defendants urge this

---

[2] *See United States v. Bellaizac-Hurtado*, 700 F.3d 1245, 1257 (11th Cir. 2012) (expressly differentiating the Offences Clause from the Felonies Clause by noting that "Congress possesses additional constitutional authority to restrict conduct on the high seas, including the Piracies Clause, U.S. Const., Art. I, § 8, cl. 10; the Felonies Clause, *id.*; and the admiralty power, *United States v. Flores*, 289 U.S. 137, 148–49, 53 S.Ct. 580, 582, 77 L.Ed. 1086 (1933). And we have always upheld

7

Court to take here. We find that the reasoning in *Macias* provides a persuasive basis to deny Defendants' motion.

Putting *Macias* aside, Defendants' motion should also be denied because their theory for dismissal relies on First Circuit authority that departs from binding precedent in this circuit holding that the MDLEA is a valid exercise of Congress' power under the Felonies Clause.

In support of their argument Defendants rely primarily on a recent case from the First Circuit holding that § 70502(d)(1)(C) exceeded the bounds of the Felonies Clause. *See United States v. Davila-Reyes*, 23 F.4th 153 (1st Cir. 2022). After a review of various historical sources, *Davila-Reyes* concluded that the Felonies Clause only allows for the prosecution of crimes "committed by U.S. nationals or on vessels subject to U.S. jurisdiction *under international law*." *Id*. at 180 (emphasis added). And, according to the First Circuit, under international law a vessel may only be deemed stateless under three scenarios: (1) when the vessel refuses to claim a nationality; (2) when the vessel claims more than one nationality; and (3) when the claimed nation of registry affirmatively disavows a claim of nationality. *Id*. at 187. On the other hand, § 70502(d)(1)(C) "displaces the prima facie showing of nationality that arises from an oral assertion of nationality or registry—made in accordance with international law[,]" despite the fact that no source of international law recognizes a "country's failure to confirm nationality (instead of an outright denial), as a basis for

---

extraterritorial convictions under our drug trafficking laws as an exercise of power under the Felonies Clause."

overcoming [that] prima facie showing[.]" *Id.* at 184, 189. As such, the First Circuit held that § 70502(d)(1)(C) conflicts with international law and exceeds the authority granted in the Felonies Clause. *See id.* at 193.

But Defendants' reliance on *Davila-Reyes* is misplaced, for this Court is bound by the Eleventh Circuit, not the First Circuit; and the Eleventh Circuit has repeatedly held that the MDLEA is a valid exercise of Congress's power under the Felonies Clause.[3] *See United States v. Campbell*, 743 F.3d 802, 812 (11th Cir. 2014) ("[W]e have repeatedly held that Congress has the power, under the Felonies Clause, to proscribe drug trafficking on the high seas."); *Bellaizac-Hurtado*, 700 F.3d at 1257 (11th Cir. 2012) ("[W]e have always upheld extraterritorial convictions under our drug trafficking laws as an exercise of power under the Felonies Clause."); *Estupinan*, 453 F.3d at 1339 ("[W]e readily hold that the district court committed no error in failing to *sua sponte* rule that Congress exceeded its authority under the Piracies and Felonies Clause in enacting the MDLEA."); *Macias*, 654 F. App'x at 460 (11th Cir. 2016) ("This Court has already twice rejected the argument that Congress exceeded its authority under the Felonies Clause in enacting the MDLEA.").

---

[3] Defendants' argument would not fare any better even if we were to apply the *Davila-Reyes* holding to this case. As noted in *Davila-Reyes*, a prima facie showing of nationality arising from a master's oral claim can be undermined, including, "[f]or example, [when] the vessel's claimed nationality differs from the nationality of most crew members, or if a small vessel is interdicted far from the claimed country[.]" *Davila-Reyes*, 23 F.4th at 192. Accordingly, Defendants' claim of Dominican nationality here would fail because the vessel was interdicted far away from the Dominican Republic. *See* [D.E. 1].

9

As the Government rightly points out, Defendants' theory of unconstitutionality conflicts with Eleventh Circuit precedent in both *Campbell* and *Hernandez*. In *Campbell*, U.S. officers interdicted a vessel transporting marijuana in international waters. Although the vessel lacked all indicia of nationality, the master made a claim of Haitian nationality, which the Haitian government could neither confirm nor deny. As such, the vessel was subjected to U.S. jurisdiction and the crew was arrested and properly charged under the MDLEA. *See Campbell*, 743 F.3d at 804. The Eleventh Circuit squarely rejected Campbell's claim that Congress exceeded its authority under the Felonies Clause to prosecute his crime under the MDLEA, holding that § 70502(d)(1)(C) represents a valid exercise of extraterritorial jurisdiction and allows for the prosecution of drug trafficking on the high seas. *Id.* at 810 ("[W]e have always upheld extraterritorial convictions under our drug trafficking laws as an exercise of power under the Felonies Clause.") (quotation marks and citation omitted).

In *Hernandez* the Court addressed a statutory challenge to whether the subject vessel was "without nationality" for purposes of U.S. jurisdiction. There, the vessel was subjected to U.S. jurisdiction after the Guatemalan authorities failed to either confirm or deny the claimed nationality. However, the defendants argued that because the vessel was indeed registered in Guatemala—as registry documents later found revealed—the U.S. did not have jurisdiction under the MDLEA to prosecute them. *See United States v. Hernandez*, 864 F.3d 1292, 1298 (11th Cir. 2017). The Eleventh Circuit rejected this claim, noting that certification of the Guatemalan

10

response was all that was required to establish the vessel as stateless under MDLEA's conclusive-proof provision. *Id*. at 1299. As the Court put it, "MDLEA statelessness does not turn on actual statelessness, but rather on the response of the foreign government." *Id*.

Equally fatal for Defendants' case here was *Hernandez*'s holding as to international law challenges to the MDLEA. After concluding that the defendants were in effect asserting violations of international law, the Court noted that "[a] person charged with violating [the MDLEA] ... does not have standing to raise a claim of failure to comply with international law as a basis for a defense," because a "claim of failure to comply with international law in the enforcement of [the MDLEA] may be made only by a foreign nation." *Id.* (citing 46 U.S.C. § 70505). Accordingly, the Court held that the courts were not the proper forum to assert challenges to the MDLEA on the basis of international law because "[w]ith that text, Congress has instructed: any battle over the United States' compliance with international law in obtaining MDLEA jurisdiction *should be resolved nation-to-nation in the international arena, not between criminal defendants and the United States in the U.S. criminal justice system.*" *Id.* at 1302 (emphasis added); *see also United States v. Anchundia*, No. 1:21-00223-KD-B, 2022 WL 855561, at *2–3 (S.D. Ala. Mar. 22, 2022) (holding that "the Eleventh Circuit has determined that whether a vessel is stateless under international law is not an issue to be determined by the courts" and declining to follow *Davila-Reyes*); *cf. Jones v. United States*, 137 U.S. 202, 224 (1890) (holding

that certain factual jurisdictional determinations may be made by the Executive branch).

In light of this binding precedent establishing the constitutionality of the MDLEA, we cannot find that Congress exceeded its grant of authority under the Felonies Clause by enacting § 70502(d)(1)(C). This is a conclusion that has been unanimously adopted by all cases in our circuit analyzing this constitutional question post-*Davila-Reyes*. *See United States v. Mendez*, No. 21-CR-20579, 2022 WL 1202889, at *4 (S.D. Fla. Apr. 21, 2022) (holding that "the Eleventh Circuit [has] effectively foreclosed Defendants' argument that Congress did not have the power under the Felonies Clause to enact the MDLEA's jurisdictional provisions."); *United States v. Urbina*, No. 8:21-CR-108-TPB-AAS, 2022 WL 1171366, at *1 (M.D. Fla. Apr. 20, 2022) (refusing to apply *Davila-Reyes* because "[t]he Eleventh Circuit has consistently rejected constitutional challenges to the MDLEA. . . . [and] has held that the MDLEA is a valid exercise of Congress's power under the Felonies Clause[.]"); *United States v. Barros*, No. 21-CR-20438, 2022 WL 1135707, at *5 (S.D. Fla. Apr. 18, 2022) (upholding § 70502(d)(1)(C) and rejecting "Defendants' invitation to overlook binding precedent establishing the constitutionality of the MDLEA[.]"); *United States v. Berroa*, No. 21-20359-CR, 2022 WL 1166535, at *3 (S.D. Fla. Apr. 20, 2022) ("The Eleventh Circuit has repeatedly held that the MDLEA is a valid exercise of Congress's power under the Felonies Clause."); *United States v. Waters*, No. 21-20582-CR, 2022 WL 1224728, at *2 (S.D. Fla. Apr. 26, 2022) (same); *Anchundia*, 2022 WL 855561 at *2 (same).

Further, even assuming that the Felonies Clause is bound by CIL, the MDLEA's extraterritoriality is further supported by the protective principle. The protective principle is "the right of a state to punish a limited class of offenses committed outside its territory by persons who are not its nationals – offenses directed against the security of the state or other offenses threatening the integrity of governmental functions that are generally recognized as crimes by developed legal systems." Restatement (Third) of Foreign Relations § 402, cmt. f (1987); *see also United States v. Gonzalez*, 776 F.2d 931, 938 (11th Cir. 1985) (the protective principle "permits a nation to assert jurisdiction over a person whose conduct outside the nation's territory threatens the nation's security"). This provides an additional basis to hold that § 70502(d)(1)(C) complies with international law because "Congress, under the protective principle of international law, may assert extraterritorial jurisdiction over vessels in the high seas that are engaged in conduct that has a potentially adverse effect and is generally recognized as a crime by nations that have reasonably developed legal systems." *United States v. Tinoco*, 304 F.3d 1088, 1108 (11th Cir. 2002) (quotation marks and citation omitted).

In sum, because this Court is "bound to follow prior binding precedent unless and until it is overruled" by the Eleventh Circuit or the Supreme Court, *United States v. Cruickshank*, 837 F.3d 1182, 1187 (11th Cir. 2016), we hold that § 70502(d)(1)(C) is a valid exercise of Congress' power under the Constitution and reject Defendants' challenges.

C. *<u>MDLEA Is Not Unconstitutional As Applied to Defendants Apprehended Within an Exclusive Economic Zone</u>*

Alternatively, Defendants argue that § 70502(d)(1)(C) is unconstitutional as applied to them because they were apprehended within Colombia's Exclusive Economic Zone (EEZ), and according to Defendants, the EEZ constitutes territorial waters and not the high seas. But as the Government points out, this argument fails because precedent from the Eleventh Circuit and several district courts holds that an EEZ does not fall within the territorial waters of a nation.

The Eleventh Circuit has defined the high seas to constitute "all waters which are neither territorial seas nor internal waters of the United States or of any foreign country." *See United States v. McPhee*, 336 F.3d 1269, 1273 (11th Cir. 2003) (quoting 33 C.F.R. § 2.05-1). A vessel outside the recognized 12-mile limit of a nation's territorial seas is a "vessel located within international waters" subject to the U.S.'s jurisdiction under the MDLEA. *Id.* at 1247 (holding that a vessel intercepted 17 miles of the Bahamans was "unambiguously in international waters at the time of its interception."). Here, it is undisputed that Defendants were intercepted approximated 126 nautical miles north of La Guajira, Colombia. Applying this precedent, it is clear that they were captured on the high seas.

Furthermore, several courts, including some in this district, have held that a nation's EEZ remains part of the high seas and does not fall within the territorial waters of that nation. *See United States v. Alfonso*, No. 21-20306-CR, ECF No. 47 at 5-6 & n.2 (S.D. Fla. Nov. 22, 2021) (Altonaga, C.J.) (holding that the defendants were in the high seas when interdicted in the Dominican Republic's exclusive economic

14

zone and collecting cases holding that territorial waters only extend to twelve nautical miles off the coast); *Dilbert v. United States*, No. 8:13-CV-2189-T-30MAP, 2013 WL 5408444, at *3 (M.D. Fla. Sept. 25, 2013) (holding that the petitioner "misinterpret[ed]" the United Nations Convention on the Law of the Sea and applying the "12-nautical-mile definition of territorial waters" as required by *McPhee*); *see also United States v. Beyle*, 782 F.3d 159, 167 (4th Cir. 2015) (holding that the exclusive economic zone is "merely part of the high seas where that nation has special economic rights and jurisdiction"). Accordingly, we find that jurisdiction was properly exercised under § 70502(d)(1)(C) because Defendants were interdicted on the high seas and, as such, their motion to dismiss should be DENIED.

## IV. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Defendants' joint motion to dismiss the Government's indictment [D.E. 23] should be **DENIED**.

Pursuant to Local Magistrate Rule 4(b), the parties have until August 3, 2022, to file written objections, if any, with the District Judge. Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Comm'r of Soc. Sec.,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 27th day of July, 2022.

> /s/ *Edwin G. Torres*
> EDWIN G. TORRES
> United States Magistrate Judge